**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JOAN J. GARNER | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. _____ |
| VS. | § | |
| | § | With Jury Demand Endorsed |
| AHP SERVICING, LLC, CITIFINANCIAL | § | |
| SERVICING, LLC, CARRINGTON | § | |
| MORTGAGE SERVICES, LLC, | § | |
| ONEMAIN FINANCIAL SERVICES, INC, | § | |
| and SN SERVICING CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Joan J. Garner ("Plaintiff"), by and through counsel, and for her Complaint against Defendants AHP Servicing, LLC ("AHP"), Citifinancial Servicing, LLC ("CitiFinancial"), Carrington Mortgage Services, LLC ("Carrington"), OneMain Financial Services, Inc., ("One Main"), and SN Servicing Corporation ("SN"), (collectively the "Defendants"), states as follows:

### I. INTRODUCTION

1. Plaintiff asserts claims against Defendants that stem from Defendants' willful, knowing, and malicious actions taken against Plaintiff in furtherance of Defendants illegally attempting to collect a debt from Plaintiff *in personam* that she did not owe because years ago it had been discharged as to her personal liability in her subject Chapter 7 bankruptcy case; such actions being part of Defendants' policies, procedures, practices and design to

1

profit financially from unsophisticated debtors by illegally contacting and harassing them to collect on consumer debts discharged in their respective bankruptcy cases.

2. Specifically, Plaintiff asserts causes of action against Defendants for violating: 1) 15 U.S.C. § 1692 *et seq.,* known as the Fair Debt Collection Practices Act (the "FDCPA"); 2) the Texas Debt Collection Act (the "TDCA"), Texas Finance Code § 392.001 *et. seq.*; 3) the common law tort of invasion of privacy; and 4) the Chapter 7 automatic stay and discharge injunction of the United States Bankruptcy Court of the Eastern District of Texas, Beaumont Division, and seeks to recover actual, statutory, and punitive damages, legal fees and expenses against Defendants.

## II. PARTIES

3. Plaintiff is a natural person residing in Jefferson County, Texas, and is a "consumer" as defined by the TDCA, Tex. Fin. Code § 392.001(1) and the FDCPA, 15 U.S.C. § 1692(3).

4. Defendant AHP Servicing, LLC is a foreign limited liability company that is engaged in the business of consumer finance in this district, the State of Texas, and in other states in the United States, that may be served by delivering a summons to its registered agent, Universal Registered Agents, Inc., 412 South Morgan Street, Granbury, TX 76048.

5. Defendant Carrington is a foreign limited liability company that is engaged in the business of consumer finance in this district, the State of Texas, and in other states in the United States that may be served by delivering a summons to its registered agent, CT Corporation Systems, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136

6.    Defendant CitiFinancial is a foreign limited liability company that is engaged in the business of consumer finance in this district, the State of Texas, and in other states in the United States that may be served by delivering summons to its registered agent, CT Corporation Systems, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

7.    Defendant One Main is a foreign corporation that is engaged in the business of consumer finance in this district, the State of Texas, and in other states in the United States and may be served by delivering a summons to its registered agent, CT Corporation System, 1999 Bryan St. Suite 900, Dallas, TX 75201.

8.    Defendant SN is a foreign corporation engaged in business of consumer finance in this district, the State of Texas, and in other states in the United States, which may be served by delivering citation to its registered agent the Prentice-Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218 USA.

9.    Defendants are "persons" and a "users" of consumer credit and other financial information, as said terms are defined under the FCRA.

10.   Defendants are "debt collectors" as defined by Tex. Fin. Code § 392.001(6) and 15 U.S.C. § 1692a.

11.   The debt at issue that Defendants were attempting to collect was a "consumer debt" as defined by Tex. Fin. Code § 392.001(2) and 15 U.S.C. § 1692a as defined by the TDCA and FDCPA.

12.   Defendants are furnishers of consumer credit information to national consumer reporting agencies Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian

Information Solutions, LLC ("Experian") (collectively the "Credit Bureaus" or "Credit Reporting Agencies").

### III. JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

14. Venue in this district is proper because Plaintiff resides in this district, Defendants transact business in this district, and the conduct complained of occurred in this district.

### IV. FACTUAL ALLEGATIONS

**A.  Plaintiff Included the Subject Debt in Her Bankruptcy Case and Surrendered the Real Property Collateral.**

15. On or about October 16, 2013, CitiFinancial and One Main sent Plaintiff a letter informing her that CitiFinancial was the new owner of her mortgage, a residential mortgage, a consumer debt she allegedly owed, identified as One Main Account No. xx4300 (also known as AHP Account No. xxx2141 and SN Loan No. xxx1024) (individually and/or collectively the "Loan" or "Account"), and they asserted claims against her to collect on the Account.

16. The debt on the Account related to Plaintiff's purchase of real property located at 5022 23rd Street, Groves, Texas (the "Property") and required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.

17.    On December 9, 2013, Plaintiff filed for bankruptcy under Chapter 7 of the U.S.

Bankruptcy Code in case number 13-10646 ("Bankruptcy Case") in the United States

Bankruptcy Court for the Eastern District of Texas, Beaumont Division ("Bankruptcy

Court").

18.    In Plaintiff's bankruptcy petition, Plaintiff listed a claim for the Account in Schedule "D"

as a secured claim on One Main Account No. xx4300, secured by the Property with One

Main and CitiFinancial identified as the creditors.

19.    On December 12, 2013, the Bankruptcy Noticing Center sent One Main and CitiFinancial

a copy of the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and

Deadlines" ("341 Notice") for the Bankruptcy Case by electronic transmission and first

class mail, respectively, which constituted formal notice to them of the Bankruptcy Case.

The 341 Notice warned all creditors, including One Main and CitiFinancial, in

conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362.

The 341 Notices sent to such Defendants were not returned; thus, there is a presumption

they were received.

20.    A true and correct copy of the 341 Notice is attached hereto as Exhibit "A."

21.    Included with Plaintiff's bankruptcy petition was her "CHAPTER 7 INDIVIDUAL

DEBTOR'S STATEMENT OF INTENTION" ("Statement of Intention") in which she

noted that the Property will be "surrendered," as she had previously and permanently

vacated the Property in September 2012, which was over a year before filing her

Bankruptcy Case.

22.     A true and correct copy of Plaintiff's Statement of Intention is attached hereto as Exhibit "B."

**B.     On March 26, 2014, the Subject Debt was Discharged in Plaintiff's Bankruptcy Case.**

23.     On March 26, 2014, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") in her Bankruptcy Case. The Discharge Order followed Official Form B18. The Discharge Order discharged Plaintiff from any liability for the subject pre-petition claim on the Account.

24.     Included with the Discharge Order was an explanation of the general injunction prohibiting creditors and others holding pre-petition claims from attempting to collect those claims from Plaintiff, warning all creditors in conspicuous language that "**Collection of Discharged Debts Prohibited**" and included the explanatory language contained therein about the discharge injunction, stating, in part, "[t]he discharge prohibits any attempt to collect from the debtor a debt that has been discharged," and that "a creditor is not permitted to contact a debtor by mail, phone, or otherwise…or take any other action to collect a discharged debt from the debtor."

25.     On March 28, 2014, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to One Main and CitiFinancial by U.S. first class mail, which constituted formal notice to them of the discharge and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a). The copies of the Discharge Order and notice

about the discharge injunction sent to these defendants were not returned; thus, there is a presumption they were received.

26.     A true and correct copy of the Discharge Order is attached hereto as Exhibit "C."

27.     At no time during the pendency of the Bankruptcy Case did any of the Defendants or any other person or entity object to or dispute the details of the subject claim contained in Plaintiff's Schedule "D" filed with her Petition in the Bankruptcy Case.

28.     At no time during the pendency of the Bankruptcy Case did Plaintiff reaffirm the subject debt on the Account.

29.     At no time during the pendency of Plaintiff's Bankruptcy Case was the subject pre-petition claim declared to be non-dischargeable by the Bankruptcy Court.

**C.      During her Bankruptcy Case and Post-Discharge, Defendant One Main Attempted to Collect the Subject Discharged Debt on the Account from Plaintiff.**

30.     While Plaintiff's Bankruptcy Case was pending and post-discharge, One Main engaged in illegal *in personam* debt collection activity against Plaintiff on the Account by:

(1)     Sending Plaintiff notices and correspondences demanding payment of the discharged debt or actions by Plaintiff to coerce such payment to benefit Defendant(s);

(2)     Sending Plaintiff statements on the Account demanding payment of the discharged debt; and

(3)     Making collection calls to Plaintiff regarding the Account.

31.     After receiving the prohibited contacts from One Main, Plaintiff, on several occasion, went to One Main's office in Nederland, Texas, and reminded and informed its representatives about her bankruptcy case and/or discharge of the debt on the Account.

Also, she requested One Main cease contacting her and reminded and informed its representatives that she had long ago surrendered and vacated the Property. In response, Plaintiff was told by an employee of One Main by the name Holly that only One Main's North Carolina office had control over collections.

32. After conducting reasonable discovery, Plaintiff will show that during her Bankruptcy Case and after she received her discharge, One Main's representatives or agents repeatedly called her on her cellular phone, seeking payment from her on the Account or actions from her to coerce and induce her to take action(s) to benefit Defendant(s) financially. On several occasions when called by One Main's representatives or agents, Plaintiff told the caller about her Bankruptcy Case and/or bankruptcy discharge and requested One Main cease and desist from contacting her.

33. After conducting reasonable discovery, Plaintiff will show that on numerous occasions, during her Bankruptcy Case and post-discharge, One Main sent Plaintiff statements, letters and notices attempting to deceive and coerce her to pay on the Account or to induce Plaintiff to take action(s) to financially benefit Defendant(s).

**D.    Post-Discharge, Defendant Carrington Acquired the Servicing Rights on the Discharged Account.**

34. Sometime after the debt was discharged, Defendant Carrington acquired the servicing rights for the Account. Upon acquiring these servicing rights or prior thereto, Carrington gained access to and possession of the records and/or information about Plaintiff's

Bankruptcy Case and discharge from the owner of the debt, prior servicers of the Account, and/or independently.

**E.    Post-Discharge, Carrington Engaged in Prohibited Actions Against Plaintiff in its Efforts to Collect the Subject Discharged Debt *In Personam* from Plaintiff.**

35.    Following Plaintiff's bankruptcy discharge, Carrington engaged in illegal debt collection activity against Plaintiff on the subject discharged debt by:

(1)    Reporting false information on the Account to TransUnion and Equifax to be reported on Plaintiff's credit reports;

(2)    Sending Plaintiff statements, notices and correspondences demanding payment of the discharged debt or actions from Plaintiff to deceive and coerce payment from her to benefit Defendant(s); and

(3)    Making collection calls to Plaintiff demanding payment of the discharged debt or actions from Plaintiff to deceive and coerce payment from her.

36.    On January 31, 2018, almost 4 years after Plaintiff's bankruptcy discharge, Carrington furnished false information on the Account to TransUnion and Equifax to be reported on Plaintiff's credit reports, specifically that Plaintiff had a closed mortgage with Carrington. Because Carrington acquired servicing rights on the debt after it was discharged, there was never a debtor-creditor relationship between Plaintiff and Carrington to permit Carrington to report a tradeline on the Account with the CRAs. Even if there was, Carrington failed to report that the Account was discharged in bankruptcy to TransUnion, and the Account was reported as "included in bankruptcy," as if the debt was not discharged.

37.    Redacted copies of relevant excerpts from Plaintiff's TransUnion and Equifax credit reports are attached hereto as Exhibits "D" and "E," respectively.

9

38.     After conducting reasonable discovery, Plaintiff will show that on numerous occasions, after Plaintiff received her bankruptcy discharge, Carrington sent Plaintiff statements, letters, and/or notices, attempting to deceive and coerce Plaintiff to pay Carrington the discharged debt or to induce Plaintiff to take action(s) to benefit the Defendants.

39.     After conducting reasonable discovery, Plaintiff will show that during and after Plaintiff received a discharge in her Bankruptcy Case, representatives or agents for Carrington called her numerous times on her cell phone, repeatedly harassing her, seeking payment on the Account or attempting to deceive and coerce her to take action(s) to benefit Defendants, including, but not limited to, signing a deed-in-lieu of foreclosure, resuming payments on the Account, paying a discounted balance on the Account or applying for a modification of the Loan.

40.     When Carrington's representatives or agents called Plaintiff, if she answered the call, she often informed the caller about her Bankruptcy Case, discharge and surrender of the Property years before. She also informed the caller that Carrington should not be contacting her and requested Carrington cease and desist from all contact with her.

**F.      Post-Discharge, Defendant SN Acquired the Servicing Rights on the Discharged Account.**

41.     Sometime in 2017 or 2018, SN acquired the servicing rights for the Account. Upon acquiring these servicing rights or prior thereto, SN gained access to and possession of the records and/or information about Plaintiff's Bankruptcy Case and discharge of the

debt on the Account from the owner of the debt, prior servicers of the Account, and/or independently.

**G.     Post-Discharge, SN Engaged in Prohibited Actions Against Plaintiff in its Efforts to Collect the Subject Discharged Debt *In Personam* from Plaintiff.**

42.     Years after Plaintiff's bankruptcy discharge, SN engaged in illegal debt collection activity against Plaintiff on the subject discharged debt by:

   1)     Sending Plaintiff statements, notices and correspondences demanding payment of the discharged debt or actions from Plaintiff to deceive and coerce payment from her to benefit Defendant(s), for example, purchase hazard insurance for the long-ago surrendered Property; and

   2)     Making collection calls to Plaintiff demanding payment of the discharged debt or actions from Plaintiff to deceive and coerce payment from her.

43.     On or about July 3, 2018, more than 4 years after Plaintiff's bankruptcy discharge and close to 5 years after Plaintiff surrendered and vacated the Property, SN sent Plaintiff a notice regarding hazard insurance for the Property, titled "**<u>Notice of Insurance Requirements-second and final notice</u>**" ("SN Notice"). The SN Notice informed Plaintiff that this was her second and final notice that she had not provided acceptable evidence of hazard insurance and SN plans to buy hazard insurance for the Property. It also states, "You must pay us for any period during which the insurance we buy is in effect but you do not have insurance" and that the insurance SN buys "[**w]ill cost an estimated $692.99 annually, which may be more expensive than you can buy yourself**," and "**may not provide as much coverage as an insurance policy you buy yourself**."

44.     A redacted copy of the SN Notice is attached hereto as Exhibit "F."

11

45.     After receiving the SN Notice, Plaintiff called SN and spoke with its representative, employee Sheri Matthew, and informed her about Plaintiff's bankruptcy discharge and surrender of the Property years ago. She requested that SN cease contacting her about the Account.

46.     After conducting reasonable discovery, Plaintiff will show that on numerous occasions, after Plaintiff received her bankruptcy discharge, SN sent Plaintiff many mortgage and escrow statements, letters, and/or notices, attempting to deceive and coerce Plaintiff to pay SN the discharged debt or to induce Plaintiff to take action(s) to benefit the Defendants.

47.     After conducting reasonable discovery, Plaintiff will show that during and after Plaintiff received a discharge in her Bankruptcy Case, representatives or agents for SN called her numerous times on her cell phone, repeatedly harassing her, demanding payment on the Account, or attempting to deceive and coerce her to take action(s) to benefit Defendant(s), financially.

48.     When SN's representatives or agents called Plaintiff, on many occasions she informed the caller about her Bankruptcy Case, discharge and surrender of the Property years prior, and requested SN cease and desist from contacting her.

**H.     Post-Discharge, Defendant AHP Acquired the Servicing Rights on the Discharged Account.**

49.     Sometime in 2018 or 2019, AHP acquired the servicing rights for the Account. Upon acquiring these servicing rights or prior thereto, AHP gained access to and possession of

the records and/or information about Plaintiff's Bankruptcy Case and discharge of the debt on the Account from the owner of the debt, prior servicers of the Account, and/or independently.

**I.      Post-Discharge, AHP Engaged in Prohibited Actions Against Plaintiff in its Efforts to Collect the Subject Discharged Debt *In Personam* from Plaintiff.**

50.    Years after Plaintiff's bankruptcy discharge, AHP engaged in illegal debt collection activity against Plaintiff on the subject discharged debt by:

  1)    Sending Plaintiff statements, notices and correspondences demanding payment of the discharged debt or actions from Plaintiff to deceive and coerce payment from her to benefit Defendant(s), for example, offering a discounted cure payment on the Loan, even though the Property had been surrendered over 6 years before; and

  2)    Making collection calls to Plaintiff demanding payment of the discharged debt or actions from Plaintiff to deceive and coerce payment from her.

51.    On or about February 20, 2019, almost 5 years after Plaintiff's bankruptcy, AHP sent Plaintiff a letter informing her it was servicing the Loan and requesting she call AHP at the toll-free phone number provided to discuss assistance available in cause she was having trouble keeping up with her mortgage payment ("AHP 2/20/19 Loan Options Ltr."). The letter requests Plaintiff fill out and return to AHP the provided Homeowner Checklist and Certification, asking for her private, financial and personal information to be considered for a reinstatement of the Loan, discounted payoff, forbearance plan, modification, short sale or deed-in-lieu of foreclosure, despite the fact Plaintiff had surrendered the Property and vacated it over 5 years before.

52.    A redacted copy of the AHP 2/20/19 Loan Options Ltr. is attached hereto as Exhibit "G."

53.     On or about April 3, 2019, AHP sent Plaintiff a "**Loan Statement**," complete with a self-addressed, detachable payment coupon ("AHP 4/3/19 Loan Statement"). The statement includes "Billing Information" representing there was an "Amount Due: $878.07" with a "Due Date: 04/14/19" and "05/14/19," and a "**Total Amount Due: $64,977.18**." It also includes a "**Delinquency Notice**," informing her "**[t]he loan became delinquent on 04/14/13**" and "**Total: $64,977.18 due**" and that "**[t]his is the amount needed to bring the loan current**." The payment coupon has printed on it "Due Date: 05/14/19" and "**Total Amount Due $64,977.18**" and includes blank lines for Plaintiff to write in an itemized breakdown of the amount and "Total Remitted."

54.     A redacted copy of the AHP 4/3/19 Loan Statement is attached hereto as Exhibit "H."

55.     On or about May 13, 2019, AHP sent Plaintiff a "**Loan Statement**," complete with a self-addressed, detachable payment coupon ("AHP 5/13/19 Loan Statement"). The statement has printed on it, "Payment Due Date 05/14/19" and "Amount Due $878.07." It also includes a section titled, "Explanation of Amount Due", showing a "**Past Due Amount $64,099.11**." The payment coupon instructs Plaintiff to "Please return this portion with your payment," and has printed on it "**Payment Due Date: 05/14/19,**" "**Current Payment: $878.07**," "**Past Due Amount $64,977.18**" and "TOTAL AMOUNT DUE $878.07." It also includes a blank space for Plaintiff to write in the "Amount Enclosed."

56.     A redacted copy of the AHP 5/13/19 Loan Statement is attached hereto as Exhibit "I."

57.  On or about November 4, 2019, AHP sent Plaintiff a letter requesting she call AHP at the provided phone number to discuss available option on the Loan, including, a discounted cash settlement of $62,640.00, modification or Deed In Lieu of Foreclosure, where AHP states it will Plaintiff $1,000.00 for her cooperation with a Deed In Lieu ("AHP 11/04/19 Loan Options Ltr

58.  A redacted copy of the AHP 11/04/19 Loan Options Ltr. is attached hereto as Exhibit "J."

59.  After conducting reasonable discovery, Plaintiff will show that on numerous occasions, after Plaintiff received her bankruptcy discharge, AHP sent Plaintiff many mortgage and escrow statements, letters, and/or notices, attempting to deceive and coerce Plaintiff to pay AHP the discharged debt or to induce Plaintiff to take action(s) for Defendant(s) financial benefit.

60.  After conducting reasonable discovery, Plaintiff will show that during and after Plaintiff received a discharge in her Bankruptcy Case, representatives or agents for AHP called her numerous times on her cell phone, demanding payment on the Account, or attempting to deceive and coerce her to take action(s) to benefit Defendant(s) financially.

61.  When AHP's representatives or agents called Plaintiff, on many occasions she informed the caller about her Bankruptcy Case, discharge and surrender of the Property years prior, and requested AHP cease and desist from contacting her.

## V. GROUNDS FOR RELIEF - COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

62.     Plaintiff repeats, re-alleges, and incorporates by reference the above Paragraphs Nos. 15 through 61, as if fully rewritten here.

63.     The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. *See* 15 U.S.C. §1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

64.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C.

16

§1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exist a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

65. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. *See* 15 U.S.C. §1692b.

66. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to ensure debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692e.

67. The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation. Also, the FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor/consumer.

68. The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard. *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); Graziano v. Harrison, 950 F.2d 107, 111, fn5 (3rd Cir. 1991). The FDCPA was not "made for the

protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Id.*

69. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain per se violations of false and deceptive collection conduct. *See* 15 U.S.C. § 1692e (1) - (16).

70. Defendants Carrington, SN and AHP's post-discharge collection actions at issue, as detailed above in paragraphs nos. 35 through 61, violate 15 U.S.C. §1692e(2)(A) and 15 U.S.C. § 1692f (1) were engaged in using false, deceptive and misleading representations that Plaintiff was still liable for the discharged debt or responsible to purchase insurance for the Property or that she could qualify for a modification, when she was ineligible for such an option, since she was not residing in the Property.

71. Defendants Carrington, SN and AHP's actions described hereinabove are the manifestations of their practices and policies to ignore the provisions of the Bankruptcy Code applicable to them and illegally collect or attempt to collect pre-petition debts that have been discharged from unsophisticated debtors.

## VI. GROUNDS FOR RELIEF - COUNT II

## TEXAS FINANCE CODE – UNFAIR DEBT COLLECTION

72.     Plaintiff repeats, re-alleges, and incorporate by reference the above paragraphs nos. 15 through 61 as if fully rewritten here.

73.     All Defendants have violated the Texas Finance Code in various ways including, but not limited to, the following:

      a)     Tex. Finance Code Section 392.302(4), provides that "[i]n debt collection, a debt collector may not oppress, harass, or abuse a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number. Here, OneMain, AHP, Carrington and SN, both independently and acting as an agent for the owner of the Loan, CitiFinancial, violated this provision by making the collection calls at issue to Plaintiff during the bankruptcy or post-discharge;

      c)     Tex. Fin. Code § 392.304(a)(8), prohibits Defendants from misrepresenting the character, extent, or amount of Plaintiffs' debt. Here, Carrington, independently and acting as an agent for Citifinancial, misrepresented information about the status of the Account it provided to TransUnion and Equifax which, in turn, was misrepresented to Plaintiff and other third parties, as such misrepresentations were reported on her credit reports. Also, all Defendants made misrepresentations to Plaintiff in letters, notices, statements and verbally during collection calls they made to Plaintiff,  as stated hereinabove, that the subject discharged debt was past due and owing by Plaintiff, all misrepresentations of the status of debt at issue; and

      d)     Tex. Fin. Code § 392.304(a)(19), which prohibits Defendants' use of false representations or deceptive means to collect a debt, since the debt at issue had been included in Plaintiff's Bankruptcy Case or discharged in Plaintiffs' Bankruptcy Case, at all relevant times, and there were no post-discharge business transactions between the Plaintiff and any of the Defendants, for the same reasons stated in the previous paragraph, the only conclusion that can be drawn is Defendants were trying to coerce payment of the discharged debt from Plaintiff or gather and obtain information about Plaintiff in furtherance of their attempts to collect the discharged debt, their actions at issue were deceptive means to collect a debt since the debt had already been discharged and was uncollectible and the discharge injunction was in place.

74.    Under Tex. Fin. Code Ann. § 392.403, Defendants' or their agents' actions at issue were violations of the TDCA, making them liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees. Plaintiff's injuries resulted from Defendants' gross negligence, malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

75.    Due to Defendants' and/or their agents' conduct at issue, Plaintiff was forced to hire counsel and their damages include reasonable attorney's fees incurred in prosecuting their claims.

## VII. Grounds for Relief - Count III

### Invasion of Privacy

76.    Plaintiff restates and reiterates the above paragraphs nos. 15 through 61, as if stated herein in their entirety.

77.    Defendants' offensive contacts with Plaintiff through written statements, notices or letters and collection calls, made in furtherance of their efforts to collect the subject discharged debt, constituted an invasion of Plaintiffs' private affairs. These invasions were ones that would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included in a consumer report and by the Discharge Order, Defendants were forbidden from contacting Plaintiff to collect on the subject discharged debt. Such wrongful acts caused injury to Plaintiffs.

78.    Plaintiffs' injuries resulted from Defendants' malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

### VIII. GROUNDS FOR RELIEF – COUNT V

#### VIOLATION OF THE AUTOMATIC STAY AND BANKRUPTCY DISCHARGE INJUNCTION

79.    Plaintiff repeats, re-alleges, and incorporates herein all previous paragraphs as if set forth herein in their entirety.

80.    At all times material to this proceeding, Defendants had actual knowledge of Plaintiffs' Bankruptcy Case and the discharge of the debt at issue therein.

81.    Defendant One Main violated the part of the Bankruptcy Court's Automatic Stay pertaining to 11 U.S.C. § 362(a)(1) which "operates as a stay, applicable to all entities, of—the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that

was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arouse before the commencement of the case under this title;…", regarding all of One Main's prohibited harassing and collection actions it took at issue during the pendency of the Bankruptcy Case. One Main continued its debt collection efforts by calling Plaintiff demanding payment and continued sending monthly statements, despite the fact that Plaintiff had surrendered the property in the bankruptcy and had permanently vacated the property.   Despite Plaintiff's repeated visits to One Main at its branch in Nederland, Texas to demand that Defendant cease its collection efforts, Defendant continued making calls to her demanding payment and sending monthly billing statements demanding payment.

82.   All Defendants failed to cease their debt collection activity on the Account and debt at issue when they became aware the debt had been discharged in Plaintiff's Bankruptcy Case, as evidenced by Defendants calling Plaintiff, sending Plaintiff statements, notices and letters, and Carrington   misrepresenting the status of the Account and debt at issue to one or more of the Credit Bureaus to be reported on Plaintiff's credit reports.

83.   Defendants and/or their agents' aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a). Defendants' failure to comply with the aforesaid laws, in light of receiving notice from the Bankruptcy Court or another source about Plaintiffs' Bankruptcy Case and the discharge of the debt at issue and the legal effect of the discharge, illustrates their contempt for the federal law and the discharge injunction.

84.    The actions of Carrington or its agents by misrepresenting information to Equifax and TransUnion to be reported on Plaintiffs' credit reports; and all Defendants by sending statements, notices and collection letters to Plaintiff on the Account to coerce payment from her or actions to benefit Defendants financially, with regard to the discharged debt; and Defendants OneMain, Carrington, SN and AHP by making collection calls to Plaintiff, constitute gross violations of the discharge injunction as set forth in 11 U.S.C. § 524(a)(1)-(3).

85.    The facts and background stated above demonstrate that Defendants willfully violated the orders and injunctions of the Bankruptcy Court as they concern the Chapter 7 bankruptcy filed by Plaintiff and Discharge Order. With this prima facie showing, the duty is on Defendants to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendants, Plaintiff must prevail on their claims, and Defendants must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the discharge of the subject debt. Any defense put forth by Defendants in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendants. Any allegation of a good faith exception should not be allowed.

86.    Specifically, Defendants violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the

commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

87. No exceptions exist under 11 U.S.C. §362 and§524 or any other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendants at issue with regard to the automatic stay or discharge injunction, as stated above.

88. The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiffs' Bankruptcy Case as pertaining to the rights and remedies of Defendants.

89. Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiff with policing the misconduct of Defendants would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendants. No allegation of a mitigation as a defense should be allowed.

90.     Plaintiff has been injured and damaged by Defendants' actions and are entitled to recover

judgment against Defendants for actual damages and punitive damages, plus an award of

costs and reasonable attorney's fees, for violations of 11 U.S.C. § 362 (One Main) and

524, and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX. VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

91.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were

taken by employees, agents, servants, or representatives, of any type, for Defendant(s),

the principal, within the line and scope of such individuals' (or entities') express or

implied authority, through employment, agency, or representation, which imputes

liability on Defendants for all such actions under the doctrine of *respondeat superior*

and/or vicarious liability; for example, all Defendants were acting as agents for the owner

of the Loan, CitiFinancial. Thus, CitiFinancial is liable for all actions of the other

Defendants.

## X. DAMAGES

92.      The conduct of Defendants at issue has proximately caused Plaintiff past and future

monetary loss, past and future mental distress, emotional anguish and a discernable injury

to Plaintiffs' emotional states and other damages, evidence for which will be presented to

the jury.

93.     The conduct of Defendants has proximately caused Plaintiff past and future damage to

her credit score, reputation and credit worthiness.

94.     After a reasonable time for discovery, Plaintiff believes she will be able to show that all actions taken by employees, agents, servants, or representatives of any type for Defendants at issue were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

95.     After a reasonable time for discovery, Plaintiff believes she will be able to show that all actions taken by Defendants at issue were performed maliciously, wantonly, recklessly, intentionally or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the law.

96.     After a reasonable time for discovery, Plaintiff believes she will be able to show Defendants have engaged in a pattern and practice of wrongful and unlawful behavior with respect to servicing and collecting on accounts and furnishing false information to the Credit Reporting Agencies and impermissibly accessing and reviewing consumer reports for the individuals named as debtors or borrowers for accounts Defendants owned or were servicing on debts discharged in bankruptcy, and Defendants are subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendants and similar companies.

97.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes she will be able to show that Defendants One Main and Carrington has policies and procedures to refuse to properly furnish and update information they provide to the CRAs to be reported on credit reports of discharged consumers, like Plaintiffs, to show

that discharged debts on accounts serviced by such Defendant have been discharged in bankruptcy and have a zero balance and not report negative credit history. The purpose of having these policies and procedures is to keep false, negative information on the credit reports of these consumers which represents that discharged debts on which such Defendant is attempting to collect are still due and owing and/or to attempt to coerce these consumers to pay discharged debt as leverage to delete inaccurate or improper negative information reported on their credit reports. At all relevant times, Such Defendant have known that once a debt on an account is discharged in bankruptcy, there can be no balance owed on the account by the discharged debtors and the account is closed. Nevertheless, Such Defendants intentionally refuse to report and update the correct, current status of such discharged debts to the CRAs.

98.     Plaintiff believes she will be able to show that Defendants One Main and Carrington report and update information they furnish to the CRAs on hundreds or thousands of accounts each month, but have willfully and maliciously refused to properly update the information on Plaintiff's discharged Account and others' accounts for debts discharged in bankruptcy upon which Defendant(s) are attempting to collect.

99.      After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes she will be able to show Defendants Carrington and One Main have promised through their subscriber agreements or contracts with the CRAs to properly furnish accurate information and correct any inaccurate information for accounts that have been discharged in bankruptcy; but such Defendants have willfully, maliciously, recklessly,

wantonly, and/or negligently failed to follow these requirements and agreements, which has resulted in such Defendants' intended consequences of false information being reported on credit reports as to discharged debt in furtherance of their attempts to collect the debt, including, but not limited to, Plaintiffs' credit report(s) at issue.

100.    At all relevant times, Defendants knew, and continue to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer legally collectible, but Defendants have made a corporate decision to willfully and maliciously act contrary to their knowledge in their calculated decisions to violate Plaintiffs' rights to privacy by impermissibly accessing Plaintiffs' credit reports post-discharge of the subject debt and making offensive contacts with Plaintiff after the discharge of the subject debt in furtherance of Defendants' efforts to collect the discharged debt from Plaintiffs, at which time there was no debtor-creditor relationship between the parties and Defendants had no legal right to contact Plaintiff as they did.

101.    After a reasonable time for discovery, Plaintiff believes she will be able to show that despite Defendants receiving dozens, if not hundreds, of disputes complaining they were illegally accessing credit reports for account holders whose debts Defendants were servicing and that had been discharged in bankruptcy, Defendants intentionally and knowingly have not corrected their policies of engaging in this action.

102.    After a reasonable time for discovery, Plaintiff believes she will be able to show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior with respect to attempting to collect on discharged accounts and furnishing incorrect

information to credit bureaus in accordance with their policies and procedures, and Defendants are subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendants and similar companies. Moreover, Plaintiff's injuries resulted from Defendants' gross negligence, malice, and/or actual fraud, which entitles Plaintiff to punitive damages.

103.    Due to Defendants' conduct, Plaintiff was forced to hire counsel and her damages include reasonable attorney's fees incurred in prosecuting their claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Joan J. Garner prays the Court will:

A.    Enter judgment in favor of Plaintiff and against Defendants for statutory damages, actual damages, costs, and reasonable and necessary attorneys' fees as provided by the FDCPA, TDCA, invasion of privacy action, violation of the automatic stay and bankruptcy discharge injunction;

B    Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.    Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.    Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,


*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
MANCHEE & MANCHEE, PC
Parkway Centre III
2745 N. Dallas Parkway, Suite 420
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

ATTORNEYS FOR PLAINTIFF


## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


January 13, 2020                          */s/ James J. Manchee*
Date                                      James J. Manchee